**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| THOMAS WESSEL, individually and on behalf of all others similarly situated, | Civil Action No.  17-cv-6703 |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| v. | |
| STARBUCKS CORPORATION, STARBUCKS NEW VENTURE COMPANY, PEPSICO, INC., and NORTH AMERICAN COFFEE PARTNERSHIP, | **JURY TRIAL DEMANDED** |
| Defendants. | |

Plaintiff Thomas Wessel ("Plaintiff" or "Mr. Wessel") by and through his counsel, brings this Class Action Complaint against Defendants Starbucks Corporation, Starbucks New Venture Company, PepsiCo, Inc., and North American Coffee Partnership ("Defendants"), on behalf of himself and all others similarly situated, and alleges upon personal knowledge as to his own actions, and upon information and belief as to counsel's investigations and all other matters, as follows:

## NATURE OF THE ACTION

1.      Plaintiff brings this consumer protection and false advertising class action lawsuit against Defendants, based on Defendants' false and misleading business practices with respect to the marketing and sale of their canned Starbucks Doubleshot® Espresso products (the "Product(s)").[1]

2.      At all relevant times, Defendants have formulated, manufactured, labeled, packaged, marketed, distributed, and sold each of the Products as a "doubleshot" of "Starbucks"

---

[1] Depicted and further defined *infra* in paragraph 17.

brand "espresso."

3.      However, none of the Products contain two shots of Starbucks brand espresso and thus fail to conform with the statement of quality made by Defendants about the Products.

4.      Plaintiff and other consumers purchased the Products, reasonably relying on the description of each Product as a "doubleshot" of "Starbucks" brand "espresso," and therefore reasonably believing that each Product contained two shots of Starbucks brand espresso.  Had Plaintiff and other consumers known that the Products did not contain two shots of Starbucks brand espresso, they would not have purchased the Products or would have paid significantly less for the Products.  Therefore, Plaintiff and other consumers have suffered injury in fact as a result of Defendants' deceptive practices.

5.      Plaintiff brings this class action lawsuit on behalf of himself and all others similarly situated.  Plaintiff seeks to represent a Nationwide Class and a New York Subclass (defined *infra* in paragraphs 37-38) (collectively referred to as "Classes").

6.      Plaintiff, on behalf of himself and other consumers, is seeking damages, restitution, declaratory and injunctive relief, and all other remedies the Court deems appropriate.

## JURISDICTION AND VENUE

7.      This Court have subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A) because this case is a class action where the aggregate claims of all members of the proposed Classes are in excess of the statutory minimum damages, exclusive of interests and costs, and Plaintiff, as well as most members of the proposed Classes, which total more than 100 class members, are citizens of states different from the state of at least one of the Defendants.

8.      This Court has personal jurisdiction over Defendants because Defendants have sufficient minimum contacts in New York or otherwise intentionally availed themselves of the

markets within New York, through their sale of the Products in New York and to New York consumers. Furthermore, Defendants PepsiCo, Inc. and North American Coffee Partnership maintain their headquarters in New York.

9.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to this action occurred in this District.

## PARTIES

10.     Plaintiff Thomas Wessel is a citizen of New York, residing in Westchester County. At least between 2016 and 2017, Mr. Wessel has purchased the following Products: Starbucks Doubleshot® Espresso – Espresso & Cream; Starbucks Doubleshot® Espresso – Espresso & Cream Light; and Starbucks Doubleshot® Espresso – Espresso & Salted Caramel Cream. Mr. Wessel purchased the Products at a Mobil gas station as well as local convenience stores in White Plains, New York. Mr. Wessel purchased the Products reasonably relying on the description of each Product as a "doubleshot" of "Starbucks" brand "espresso." Based on this description on the Products, Mr. Wessel reasonably believed that each Product contained two shots of Starbucks brand espresso. However, unbeknownst to Mr. Wessel, the Products do not contain two shots of Starbucks brand espresso. Mr. Wessel would not have purchased the Products or would have paid significantly less for the Products had he known that the Products did not contain two shots of Starbucks brand espresso. Mr. Wessel suffered injury in fact and lost money as a result of Defendants' misleading, false, unfair, and fraudulent practices, as described herein. Despite being deceived by Defendants, Mr. Wessel is likely to purchase the Products in the future if they were reformulated to contain two shots of Starbucks brand espresso.

11.     Defendant Starbucks Corporation is a Washington corporation with its principal place of business in Seattle, Washington.  Defendant Starbucks Corporation, directly and/or

through its agents, licensed the right to produce and distribute Starbucks brand products, such as the Products here, to Defendant North American Coffee Partnership, in which Defendant Starbucks New Venture Company holds a 50% equity interests.

12.    Defendant Starbucks New Venture Company is also a Washington corporation with its principal place of business in Seattle, Washington.  Defendant Starbucks New Venture Company is a wholly owned subsidiary of Defendant Starbucks Corporation and owns a 50% equity interest in Defendant North American Coffee Partnership.

13.    Defendant PepsiCo, Inc. is a North Carolina corporation with its principal place of business in Purchase, New York.  Defendant PepsiCo, Inc. through its Pepsi-Cola Company division, owns a 50% equity interest in Defendant North American Coffee Partnership, and sells and distributes the Products.

14.    Defendant North American Coffee Partnership ("NACP") is a partnership organized under the laws of New York and headquartered in Purchase, New York.  NACP consists of partners Starbucks New Venture Company and Pepsi-Cola Company, and as of mid-2015, has an approximately 97% market share in the ready-to-drink ("RTD") coffee beverage industry. In 2002, the NACP introduced the canned Starbucks Doubleshot® beverage.  To date, the NACP continues to directly and/or through its agents, produces, bottles, and distributes the Products nationwide, including in New York.  The NACP has maintained substantial distribution and sales in this District.

## FACTUAL ALLEGATIONS

### I.    The Products

15.    Defendant Starbucks Corporation, through its wholly owned subsidiary Defendant Starbucks New Venture Company, partnered with Defendant PepsiCo, Inc., through its Pepsi-Cola

Company division, to form the NACP in 1994 and now have an approximately 97 percent market share in the RTD coffee category, with annual sales of more than $1.5 billion.[2]

16.     Defendants introduced the canned Starbucks Doubleshot® beverage product line in 2002.

17.     During the relevant class period, Defendants did, and continue to, directly and/or through their agents, formulate, manufacture, label, package, market, distribute, and sell the Products, which come in at least the following varieties and flavors:[3]

    a.    Starbucks Doubleshot® Espresso – Espresso & Cream;

    b.    Starbucks Doubleshot® Espresso – Espresso & Cream Light;

    c.    Starbucks Doubleshot® Espresso – Cubano; and

    d.    Starbucks Doubleshot® Espresso – Espresso & Salted Caramel Cream.

---

[2] Based on IRI data as of 52 weeks ending June 14, 2015.

[3] All images provided of the Products were sourced from www.walmart.com (last visited on September 1, 2017) and https://www.amazon.com/Starbucks-Doubleshot-Espresso-Cream-Light/dp/B00IHVHM4Q?th=1 (last visited on September 1, 2017).

















18.    The Products are sold across New York and the United States, in store and/or online at various grocery stores, gas stations, and convenience stores.

19.    As depicted in the images in paragraph 17, Defendants conspicuously represent on the front panel of the Products' labeling that each of the Products is a "doubleshot" of "Starbucks" brand "espresso."

20.    Furthermore, when the Products are sold in multiple-unit packages, the packages uniformly represent that each of the Products is "doubleshot" of "Starbucks" brand "espresso." An example of the packaging for the Starbucks Doubleshot® Espresso – Espresso & Cream Light is depicted below:



## II.    Defendants' Products Do Not Contain Two Shots Of Starbucks brand Espresso

21.    Despite representing that each product is a "doubleshot" of "Starbucks" brand

10

"espresso," each of the Products do not contain two shots of Starbucks brand espresso, as evidenced, *inter alia*, by the amount of caffeine contained in the Products.

22.    According to the Starbucks website, a single shot (solo) of Starbucks espresso contains approximately 75mg of caffeine and two shots (doppio) contains approximately 150mg.[4]

**Nutrition Facts Per Serving (0.8 fl oz)**

| Calories 5 | Calories from Fat 0 |
|---|---|
| | % Daily Value* |
| Total Fat 0g | 0% |
| Saturated Fat 0g | 0% |
| Trans Fat 0g | |
| Cholesterol 0mg | 0% |
| Sodium 0mg | 0% |
| Total Carbohydrate 1g | 0% |
| Dietary Fiber 0g | 0% |
| Sugars 0g | |
| Protein 0g | |
| Vitamin A  0%  •  Vitamin C  0%  •  Calcium  0%  •  Iron  0% | |
| Caffeine 75mg** | |

*Percent Daily Values are based on a 2,000 calorie diet.

**Each caffeine value is an approximate value.

---

[4] https://www.starbucks.com/menu/drinks/espresso/espresso-shot?foodZone=9999#size=20 (last visited on September 1, 2017); https://www.starbucks.com/menu/drinks/espresso/espresso-shot?foodZone=9999#size=21 (last visited on September 1, 2017).

| Nutrition Facts Per Serving (1.5 fl oz) | | |
|---|---|---|
| Calories 10 | Calories from Fat 0 | |
| | | % Daily Value* |
| Total Fat 0g | | 0% |
| Saturated Fat 0g | | 0% |
| Trans Fat 0g | | |
| Cholesterol 0mg | | 0% |
| Sodium 0mg | | 0% |
| Total Carbohydrate 2g | | 1% |
| Dietary Fiber 0g | | 0% |
| Sugars 0g | | |
| Protein 1g | | |
| Vitamin A 0% • Vitamin C 0% • Calcium 0% • Iron 0% | | |
| Caffeine 150mg** | | |

*Percent Daily Values are based on a 2,000 calorie diet.

**Each caffeine value is an approximate value.

23.     However, as demonstrated in the chart below, each of the Products contains significantly less than 150mg of caffeine despite claiming to contain a "doubleshot" of "Starbucks" brand espresso:[5]

| Products | Caffeine Content/Dosage |
|---|---|
| Starbucks Doubleshot® Espresso – Espresso & Cream | 110mg |
| Starbucks Doubleshot® Espresso – Espresso & Cream Light | 120mg |
| Starbucks Doubleshot® Espresso – Cubano | 85mg |
| Starbucks Doubleshot® Espresso – Espresso & Salted Caramel Cream | 70mg |

24.     Since Defendants represent that each of the Products contains a "doubleshot" of "Starbucks" brand "espresso," each of the Products should contain two shots of Starbucks espresso

---

[5] https://www.starbucks.com/menu/catalog/product?drink=bottled-drinks#view_control=product (last visited on September 1, 2017).

and therefore approximately 150mg of caffeine.

25.     However, as demonstrated above, each of the Products contains significantly less than 150mg of caffeine and therefore cannot and does not contain two shots of Starbucks brand espresso.

26.     Therefore, Defendants' representation that each of the Products is a "doubleshot" of "Starbucks" brand "espresso" is false and misleading.

III.    **Defendants Have Engaged In False And Misleading Advertising And Have Harmed Plaintiff And Other Consumers Of The Products**

27.     As discussed above, Defendants have engaged in false, misleading, unfair, and unlawful business practices in regard to the advertising and sale of the Products.

28.     Defendants knew or should have known that the Products do not contain two shots of Starbucks brand espresso because Defendants and/or their agents formulate, test, and manufacture the Products.

29.     Defendants knew or should have known that Plaintiff and other consumers, in purchasing the Products, would rely on Defendants' foregoing representation about the Products and would therefore reasonably believe that the Products each contain two shots of Starbucks brand espresso.

30.     In reasonable reliance on Defendants' representation that each of the Products contain a "doubleshot" of "Starbucks" brand "espresso," Plaintiff purchased the Products, reasonably believing that the Products do in fact contain two shots of Starbucks brand espresso.

31.     Plaintiff and other consumers did not know, and had no reason to know, that the Products do not contain two shots of Starbucks brand espresso.

32.     Because the Products do not contain two shots of Starbucks brand espresso, as reasonably expected by Plaintiff and other consumers, Defendants' uniform practice regarding the

marketing and sale of the Products was and continues to be false and deceptive.

33.     Each consumer has been exposed to the same or substantially similar deceptive practice, as at all relevant times, (1) Defendants uniformly represented on each of the Products that they each contained a "doubleshot" of "Starbucks" brand "espresso," and (2) each of the Products do not contain two shots of Starbucks brand espresso.

34.     Plaintiff and other consumers have paid an unlawful premium for the Products. Plaintiff and other consumers would have paid significantly less for the Products had they known that each of the Products do not contain two shots of Starbucks espresso.  In the alternative, Plaintiff and other consumers would not have purchased the Products at all had they known that the Products do not contain two shots of Starbucks espresso.  Therefore, Plaintiff and other consumers purchasing the Products suffered injury in fact and lost money as a result of Defendants' false, misleading, unfair, and fraudulent practices, as described herein.

35.     As a result of their false and misleading business practice, and the harm caused to Plaintiff and other consumers, Defendants should be required to pay for all damages caused to consumers, including Plaintiff.  Furthermore, Defendants should also be enjoined from engaging in these false and deceptive practices.

36.     Despite being misled by Defendants, Plaintiff would likely purchase the Products in the future if the Products were reformulated to contain two shots of Starbucks brand espresso.

## CLASS ACTION ALLEGATIONS

37.     Plaintiff brings this case as a class action that may be properly maintained under Federal Rule of Civil Procedure 23 on behalf of himself and all persons in the United States, who within the relevant statute of limitations periods, purchased any of the Products ("Nationwide Class").

38.    Plaintiff also seeks to represent all persons, who are New York residents who purchased any of the Products, or who purchased any of the Products within the State of New York, during the relevant statute of limitations periods ("New York Subclass").

39.    Excluded from the Classes are Defendants, the officers and directors of the Defendants at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants has or had a controlling interest.  Any judge and/or magistrate judge to whom this action is assigned and any members of such judges' staffs and immediate families are also excluded from the Classes.  Also excluded from the Classes are persons or entities that purchased the Products for sole purposes of resale.

40.    Plaintiff hereby reserves the right to amend or modify the class definitions with greater specificity or division after having had an opportunity to conduct discovery.

41.    Plaintiff is a member of the Classes.

42.    <u>Numerosity</u>:  Defendants have sold millions of units of the Products.  The Products are sold in store and/or online at various retailers, gas stations, grocery stores, and convenient stores.  Accordingly, members of the Classes are so numerous that their individual joinder herein is impractical.  While the precise number of class members and their identities are unknown to Plaintiff at this time, the number may be determined through discovery.

43.    <u>Common Questions Predominate</u>:  Common questions of law and fact exist as to all members of the Classes and predominate over questions affecting only individual class members.  Common legal and factual questions include, but are not limited to, whether or not the Products contain two shots of Starbucks brand espresso.

44.    <u>Typicality</u>:  Plaintiff's claims are typical of the claims of the Classes he seeks to

represent in that Plaintiff and members of the Classes were all exposed to the same or substantially similar false and misleading representation, purchased the Products relying on the uniform false and misleading representations, and suffered losses as a result of such purchases.

45.     Adequacy:  Plaintiff is an adequate representative of the Classes because his interests do not conflict with the interests of the members of the Classes he seeks to represent, he has retained competent counsel experienced in prosecuting class actions, and he intends to prosecute this action vigorously.  The interests of the members of the Classes will be fairly and adequately protected by the Plaintiff and his counsel.

46.     Superiority:  A class action is superior to other available means for the fair and efficient adjudication of the claims of the members of the Classes.  The size of each claim is too small to pursue individually and each member of the Classes will lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendants' liability.  Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  The class action mechanism is designed to remedy harms like this one that are too small in value, although not insignificant, to file individual lawsuits for.

47.     This lawsuit is maintainable as a class action under Federal Rule of Civil Procedure 23(b)(2) because Defendants have acted or refused to act on grounds that are generally applicable to the class members, thereby making final injunctive relief appropriate with respect to all Classes.

48.     This lawsuit is maintainable as a class action under Federal Rule of Civil Procedure 23(b)(3) because the questions of law and fact common to the members of the Classes predominate over any questions that affect only individual members, and because the class action mechanism

is superior to other available methods for the fair and efficient adjudication of the controversy.

## FIRST CAUSE OF ACTION
### Violation Of N.Y. Gen. Bus. Law § 349
### (On Behalf Of The New York Subclass)

49.    Plaintiff repeats the allegations contained in paragraphs 1-48 above as if fully set forth herein.

50.    Plaintiff brings this claim individually and on behalf of the members of the proposed New York Subclass against Defendants.

51.    By representing that each of the Products is a "doubleshot" of "Starbucks" brand "espresso" but then not providing Products that contain two shots of Starbucks brand espresso, Defendants committed unfair and deceptive acts and practices in the conduct of their business, trade and commerce.

52.    The foregoing deceptive acts and practices were directed at Plaintiff and members of the New York Subclass.

53.    Defendants' misrepresentation regarding the Products is material to a reasonable consumer because it relates to the contents and characteristics of the Products purchased by the consumer.  A reasonable consumer would attach importance to such representation and would be induced to act thereon in making purchase decisions.

54.    Plaintiff and members of the New York Subclass where injured as a direct and proximate result of Defendants' violations described above, as they would not have purchased the Products or would have paid significantly less for the Products, had they known that Defendants' conduct was misleading and fraudulent.

55.    On behalf of himself and other members of the New York Subclass, Plaintiff seeks to enjoin Defendants' deceptive and unlawful acts and practices described herein, to recover his actual damages, fifty dollars (or both), whichever is greater, as well as three times his actual

damages, and reasonable attorneys' fees.

## SECOND CAUSE OF ACTION
## Violation Of N.Y. Gen. Bus. Law § 350
### (On Behalf Of The New York Subclass)

56.     Plaintiff repeats the allegations contained in paragraphs 1-48 above as if fully set forth herein.

57.     Plaintiff brings this claim individually and on behalf of the members of the proposed New York Subclass against Defendants.

58.     By representing that each of the Products is a "doubleshot" of "Starbucks" brand "espresso" but then not providing Products that contain two shots of Starbucks brand espresso, Defendants have engaged and continue to engage in false advertising in the conduct of their business, trade, and commerce.

59.     The foregoing misrepresentation was directed at consumers and was likely to mislead a reasonable consumer acting reasonably under the circumstances.

60.     Defendants' false advertising with respect to the Products is material to a reasonable consumer because it relates to the contents and characteristics of the Products purchased by the consumer.   A reasonable consumer would attach importance to such representation and would be induced to act thereon in making purchase decisions.

61.     The foregoing misrepresentation has resulted in consumer injury or harm to the public.

62.     Furthermore, Plaintiff and members of the New York Subclass where injured as a direct and proximate result of Defendants' violations described above, as they would not have purchased the Products or would have paid significantly less for the Products, had they known that Defendants' conduct was misleading and fraudulent.

63.     On behalf of himself and other members of the New York Subclass, Plaintiff seeks

to enjoin Defendants' misleading and unlawful acts and practices described herein, to recover actual damages or five hundred dollars per violation, whichever is greater, three times his actual damages, and reasonable attorneys' fees.

## THIRD CAUSE OF ACTION
## Breach Of New York Express Warranty,
## N.Y. U.C.C. § 2-313
### (On Behalf Of The Classes)

64.    Plaintiff repeats the allegations contained in paragraphs 1-48 above as if fully set forth herein.

65.    Plaintiff brings this claim individually and on behalf of the members of the Classes against Defendants.

66.    New York U.C.C. § 2-313 provides that "(a) Any affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain creates an express warranty that the goods shall conform to the affirmation or promise," and "(b) Any description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description." N.Y. U.C.C. § 2-313.

67.    Defendants have expressly warranted that the Products are each a "doubleshot" of "Starbucks" brand "espresso." This representation about the Products: (1) is an affirmation of fact or promise made by Defendants, to consumers, that the Products contain two shots of Starbucks brand espresso; (2) became part of the basis of the bargain to purchase the Products; and (3) created an express warranty that the Products would conform to that affirmation of fact or promise. In the alternative, the representation is a description of good, which was made as part of the basis of the bargain to purchase the Products, and which created an express warranty that the Products would conform to the Products' description.

68.    Plaintiff and members of the Classes reasonably and justifiably relied on the

foregoing express warranty in purchasing the Products, believing that that the Products did in fact conform to the warranty.

69.    Defendants have breached the express warranty made to Plaintiff and members of the Classes by failing to formulate, manufacture, and sell the Products to satisfy that warranty.

70.    Within a reasonable amount of time after Plaintiff discovered that Defendants did in fact breach the express warranty, Plaintiff notified Defendants of the breach.

71.    Plaintiff and members of the Classes have suffered damages as a direct and proximate result of Defendants' conduct alleged above in that they paid a premium price for the Products but did not obtain the full value of the Products as represented.  If Plaintiff and members of the Classes had known of the true nature of the Products, they would not have purchased the Products or would not have been willing to pay the premium price associated with the Products.

72.    As a result, Plaintiff and members of the Classes have suffered injury and deserve to recover all damages afforded under the law.

<u>FOURTH CAUSE OF ACTION</u>
<u>Breach of New York Implied Warranty,</u>
<u>N.Y. U.C.C. § 2-314</u>
**(On Behalf Of The Classes)**

73.    Plaintiff repeats the allegations contained in paragraphs 1-48 above as if fully set forth herein.

74.    Plaintiff brings this claim individually and on behalf of the members of the proposed Classes against Defendants.

75.    New York U.C.C. § 2-314(1) provides that "a warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind."  N.Y. U.C.C. § 2-314(1).

76.    Furthermore, New York U.C.C. § 2-314(2) provides that "[g]oods to be

merchantable must be at least . . . [c]onform to the promises or affirmations of fact made on the container or label if any." N.Y. U.C.C. § 2-314(2)(f).

77.    Defendants are merchants with respect to the sale of ready to drink caffeine products, including the Products here.  Therefore, a warranty of merchantability is implied in every contract for sale of the Products to consumers.

78.    In representing on the label and packaging of the Products that the Products are each a "doubleshot" of "Starbucks" brand "espresso", Defendants have provided a promise or affirmation of fact to consumers, that the Products each contain two shots of Starbucks brand espresso.

79.    However, the Products do not contain two shots of Starbucks brand espresso.

80.    Therefore, Defendants have breached their implied warranty of merchantability regarding the Products.

81.    Within a reasonable amount of time after Plaintiff discovered that Defendants did in fact breach the implied warranty, Plaintiff notified Defendants of the breach.

82.    If Plaintiff and members of the Classes had known that the Products did not conform to Defendants' promise or affirmation of fact, they would not have purchased the Products or would not have been willing to pay the premium price associated with Products.  Therefore, as a direct and/or indirect result of Defendants' breach, Plaintiff and members of the Classes have suffered injury and deserve to recover all damages afforded under the law.

**FIFTH CAUSE OF ACTION**
**Common Law Fraud**
**(On Behalf Of The Classes)**

83.    Plaintiff repeats the allegations set forth in paragraphs 1-48 above as if fully set forth herein.

84.    Plaintiff brings this claim individually and on behalf of the members of the Classes

against Defendants.

85.    Defendants have willfully, falsely, and knowingly formulated and manufactured the Products without two shots of Starbucks brand espresso.  Despite the this, however, Defendants have intentionally represented that the Products are each a "doubleshot" of "Starbucks" brand "espresso."  Therefore, Defendants have made an intentional misrepresentation as to the Products.

86.    Defendants' misrepresentation was material (i.e., the type of misrepresentations to which a reasonable person would attach importance and would be induced to act thereon in making purchase decisions), because it relates to the composition and characteristics of the Products.

87.    Defendants knew or recklessly disregarded the fact that the Products did not in fact contain two shots of Starbucks brand espresso.

88.    Defendants intended that Plaintiff and other consumers rely on this representation, as the representation is made conspicuously on the front panel of the Products' labels and packaging.

89.    Plaintiff and members of the Classes have reasonably and justifiably relied on Defendants' misrepresentation when purchasing the Products and had the correct facts been known, would not have purchased the Products or would not have purchased them at the prices at which they were offered.

90.    Therefore, as a direct and proximate result of Defendants' fraud, Plaintiff and members of the Classes have suffered economic losses and other general and specific damages, including but not limited to the amounts paid for the Products, and any interest that would have accrued on those monies, all in an amount to be proven at trial.

## SIXTH CAUSE OF ACTION
## Intentional Misrepresentation
### (On Behalf Of The Classes)

91.    Plaintiff repeats the allegations contained in paragraphs 1-48 above as if fully set forth herein.

92.    Plaintiff brings this claim individually and on behalf of the members of the Classes against Defendants.

93.    Defendants have marketed the Products in a manner indicating that the Products contain two shots of Starbucks brand espresso.  However, the Products do not contain two shots of Starbucks brand espresso.  Therefore, Defendants have made a misrepresentation as to the Products.

94.    Defendants' misrepresentation was material (i.e., the type of misrepresentations to which a reasonable person would attach importance and would be induced to act thereon in making purchase decisions), because it relates to the composition and characteristics of the Products.

95.    At all relevant times when such misrepresentation was made, Defendants knew that the representation was false and misleading, or have acted recklessly in making the representation and without regard to the truth.

96.    Defendants intended that Plaintiff and other consumers rely on the representation made about the Products, as the representation is made conspicuously on the front panel of the Products' labels and packaging.

97.    Plaintiff and members of the Classes have reasonably and justifiably relied on Defendants' intentional misrepresentation when purchasing the Products, and had the correct facts been known, would not have purchased the Products or would not have purchased them at the prices at which they were offered.

98.     Therefore, as a direct and proximate result of Defendants' intentional misrepresentation, Plaintiff and members of the Classes have suffered economic losses and other general and specific damages, including but not limited to the amounts paid for the Products, and any interest that would have accrued on those monies, all in an amount to be proven at trial.

**SEVENTH CAUSE OF ACTION**
**Negligent Misrepresentation**
**(On Behalf Of The Classes)**

99.     Plaintiff repeats the allegations contained in paragraphs 1-48 above as if fully set forth herein.

100.    Plaintiff brings this claim individually and on behalf of the members of the Classes against Defendants.

101.    Defendants have marketed the Products in a manner indicating that the Products contain two shots of Starbucks brand espresso.  However, the Products do not contain two shots of Starbucks brand espresso.  Therefore, Defendants have made a misrepresentation as to the Products.

102.    Defendants' misrepresentation was material (i.e., the type of misrepresentations to which a reasonable person would attach importance and would be induced to act thereon in making purchase decisions), because it relates to the composition and characteristics of the Products.

103.    At all relevant times when such misrepresentation was made, Defendants knew or have been negligent in not knowing that that the representation was false and misleading. Defendants had no reasonable grounds for believing their representation was not false and misleading.

104.    Defendants intended that Plaintiff and other consumers rely on the representation made about the Products, as the representation is made conspicuously on the front panel of the Products' labels and packaging.

105.    Plaintiff and members of the Classes have reasonably and justifiably relied on Defendants' negligent misrepresentation when purchasing the Products, and had the correct facts been known, would not have purchased the Products or would not have purchased them at the prices at which they were offered.

106.    Therefore, as a direct and proximate result of Defendants' negligent misrepresentation, Plaintiff and members of the Classes have suffered economic losses and other general and specific damages, including but not limited to the amounts paid for the Products, and any interest that would have accrued on those monies, all in an amount to be proven at trial.

### EIGHTH CAUSE OF ACTION
### Quasi Contract/Unjust Enrichment/Restitution
### (On Behalf Of The Classes)

107.    Plaintiff repeats the allegations contained in paragraphs 1-48 above as if fully set forth herein.

108.    Plaintiff brings this claim individually and on behalf of the members of the Classes against Defendants.

109.    As alleged herein, Defendants intentionally, recklessly, and negligently made a misleading representation about the Products to Plaintiff and members of the Classes to induce them to purchase the Products.  Plaintiff and members of the Classes have reasonably relied on the misleading representation and have not received all of the benefits promised by Defendants. Plaintiff and members of the Classes therefore have been induced by Defendants' misleading and false representations about the Products, and paid for them when they would and/or should not have, or paid more money to Defendants for the Products than they otherwise would and/or should have paid.

110.    Plaintiff and members of the Classes have conferred a benefit upon Defendants as Defendants have retained monies paid to them by Plaintiff and members of the Classes.

111.    The monies received were obtained under circumstances that were at the expense of Plaintiff and members of the Classes – i.e., Plaintiff and members of the Classes did not receive the full value of the benefit conferred upon Defendants.

112.    Therefore, it is inequitable and unjust for Defendants to retain the profit, benefit, or compensation conferred upon them without paying Plaintiff and the members of the Classes back for the difference of the full value of the benefit compared to the value actually received.

113.    As a direct and proximate result of Defendants' unjust enrichment, Plaintiff and members of the Classes are entitled to restitution, disgorgement, and/or the imposition of a constructive trust upon all profits, benefits, and other compensation obtained by Defendants from their deceptive, misleading, and unlawful conduct as alleged herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendants, as follows:

A.    For an order certifying the Nationwide Class and the New York Subclass under Rule 23 of the Federal Rules of Civil Procedure; naming Plaintiff as representative of the Classes; and naming Plaintiff's attorneys as Class Counsel to represent all Classes.

B.    For an order declaring that Defendants' conduct violates the statutes and laws referenced herein;

C.    For an order finding in favor of Plaintiff, and all Classes, on all counts asserted herein;

D.    For an order awarding all damages, in amounts to be determined by the Court and/or jury;

E.    For prejudgment interest on all amounts awarded;

F.      For interest on the amount of any and all economic losses, at the prevailing legal rate;

G.      For an order of restitution and all other forms of equitable monetary relief;

H.      For injunctive relief as pleaded or as the Court may deem proper;

I.      For an order awarding Plaintiff and the Classes their reasonable attorneys' fees, expenses and costs of suit, including as provided by statute; and

J.      For any other such relief as the Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Plaintiff demands a trial by jury on all issues so triable.

Dated: September 1, 2017                    **FARUQI & FARUQI, LLP**

By: _/s/ Innessa Melamed Huot_
Innessa Melamed Huot, (IH-1916)
685 Third Ave., 26th Floor
New York, NY 10017
Telephone: 212.983.9330
Fax: 212.983.9331
E-mail: ihuot@faruqilaw.com